**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **HELEN RICE,** | ) | **CIVIL ACTION NO.:** 3:17-cv-04034 |
| | ) | |
| **Plaintiff,** | ) | **JUDGE:** _____ |
| | ) | |
| **v.** | ) | **COMPLAINT FOR:** |
| | ) | |
| **GABRIEL BROTHERS, INC.**, a domestic | ) | **1. Disability Discrimination** |
| **corporation, and MICHELLE CANTRELL,** | ) | **2. Violation of Substantial Public** |
| **an individual.** | ) |    **Policy** |
| | ) | **3. FMLA Interference** |
| **Defendants.** | ) | **4. FMLA Retaliation** |

Plaintiff, Helen Rice, alleges:

## PRELIMINARY ALLEGATIONS

### The Parties

1.     At all times material hereto, Plaintiff, Helen Rice, ("Plaintiff"), was a citizen and resident of Huntington, Cabell County, West Virginia.

2.     Defendant, Gabriel Brothers, is a West Virginia corporation with its corporate offices in Morgantown, West Virginia and doing business in Cabell County, West Virginia and all over the State of West Virginia.

3.     Defendant, Michelle Cantrell, is a West Virginia resident and was – at all times relevant hereto – worked as a supervisor and managed Plaintiff.

### Jurisdiction and Venue

4.     This Court has jurisdiction over this matter because the amount in controversy exceeds the jurisdictional minimum of the Court. Venue is proper in this Court because Plaintiff is a resident of Cabell County, West Virginia, which is located

within the Southern District of West Virginia.  Further, this case is a violation of federal law, specifically the Family Medical Leave Act.

## Incident Facts

5.      In early December 2013, Defendant Gabriel Bros. hired Plaintiff as a seasonal employee. After the seasonal period, Defendant retained Plaintiff as a full-time employee.

6.      After about six months, Defendant Gabriel Bros. promoted Plaintiff to an hourly manager position. Plaintiff's primary position was to oversee "mark downs" (clearance) and the warehouse.

7.      About three months after her initial promotion, Defendant Gabriel Bros. promoted Plaintiff to a salaried manager as Merchandise/Assistant Manager.

8.      In May of 2015, Plaintiff filed for leave pursuant to the Family Medical Leave Act (FMLA) based upon a thyroid condition. Plaintiff had tumors on her thyroid that needed treatment. She had to see a specialist regularly over a period of time.

9.      On or about September 15, 2015, Defendant Gabriel Bros. hired Michelle Cantrell as its new General Manager/Store Manager for the Huntington location.

10.      Plaintiff worked for Defendant for two years with no disciplinary actions, no write-ups or other forms of reprimands until a new General Manager was hired in the fall of 2015.

11.      Before Plaintiff formally met Ms. Cantrell, Ms. Cantrell called Plaintiff when Plaintiff was out sick due to her thyroid condition and Ms. Cantrell informed her that, "you need to rethink your position with the company. We need someone reliable who is not sick all the time."

12.     Plaintiff missed a few doctor's appointments because Ms. Cantrell would not allow Plaintiff to leave for her doctor's appointment. On one occasion, Plaintiff was scheduled to work from 5:30 a.m. to 3:30 p.m.  She had an appointment after 3:30 p.m. of which Ms. Cantrell was aware. Following her scheduled shift, Ms. Cantrell informed Plaintiff that she could not leave because corporate management was coming and Plaintiff had to be present.

13.     In October 2015, Ms. Cantrell gave Plaintiff a verbal warning claiming that Plaintiff lacked "sense of urgency" and that Plaintiff was not taking care of her assigned areas.

14.     In November 2015, almost exactly 30 days later, Ms. Cantrell gave Plaintiff a written warning claiming that Plaintiff failed to comply with her verbal warning. Curiously, after her October 2015 verbal meeting, Plaintiff was pulled into a completely different position at the warehouse and was no longer on the floor. The November written warning criticized Plaintiff for not taking care of the floor where she no longer worked. Ms. Cantrell scolded Plaintiff for not being present (due to medical reasons) for another corporate visit.

15.     Plaintiff reported this to Human Resources disputing the written warning (this took place over email). Plaintiff informed "Rhonda" at Human Resources during a one-on-one follow-up that Ms. Cantrell was mistreating her based upon her medical situation/condition. Rhonda informed Plaintiff that she would investigate the write-up.

16.     In December 2015, Defendant Gabriel Bros. once again hired seasonal employees for the busier work season.

17.    Prior to Ms. Cantrell's hiring, Plaintiff would send payroll to corporate. The way the process worked is that employees would submit electronic swipe cards, which automatically calculated their hours worked and their pay. Plaintiff would review the submissions and send it to corporate. She was not permitted to make any changes or alterations. If there were any discrepancies, the employee would be present when management tried to resolve the discrepancy (e.g., if an employee did not clock out for lunch).

18.    A month after she was hired, Ms. Cantrell took over payroll responsibilities.

19.    In December 2015, Robin Burkett – an employee of Defendant Gabriel Bros. – complained to Plaintiff that the hours on her paycheck were incorrect. Plaintiff informed her that she would look into it and get back with her.

20.    Before Plaintiff had an opportunity to look into it, Ms. Cantrell came to Plaintiff and said, "Don't worry about Robin's timesheet. I'll take care of it." Plaintiff did not follow-up with it.

21.    A few days later, Ms. Burkett came back to Plaintiff and asked what she discovered about her time sheet. Plaintiff informed Ms. Burkett that she would need to go to Ms. Cantrell. Plaintiff asked Ms. Cantrell about it again and Ms. Cantrell said there were no issues with Ms. Burkett's hours.

22.    Plaintiff – at the request of Ms. Burkett – looked into it again on the computer. At that time, Plaintiff discovered that someone had altered Ms. Burkett's hours.

23.     Plaintiff went to Matthew Newcombe – the loss prevention manager of the Huntington location – to confirm the hours in question that Ms. Burkett claimed she worked and she was not getting paid for. Based upon video footage, Mr. Newcombe discovered that Ms. Burkett did indeed work the time she claimed she was not paid.

24.     Plaintiff reported this pay discrepancy to a Regional Manager (Angie) based upon Mr. Newcombe's discovery. Angie informed Plaintiff that some other employees complained of the same issues.

25.      Ms. Cantrell claimed that she would fix the mistakes on her own after the store closed.

26.     Plaintiff reported to the Regional Manager of Loss Prevention, Jeff McClain, and provided the papers she printed with Mr. Newcombe and the Regional Manager showing that Ms. Cantrell was altering payroll records of particular employees.

27.     Following this report, Plaintiff was called in to speak with the District Manager of Defendant Gabriel Bros. who proceeded to terminate her employment on January 7, 2016.

28.     Plaintiff applied for and received unemployment benefits following her termination.

## FIRST CAUSE OF ACTION

## WEST VIRGINIA HUMAN RIGHTS ACT: DISABILITY DISCRIMINATION

29.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive.

30.     At all times relevant herein, Plaintiff was an eligible employee under the Americans with Disability Act ("ADA") and the West Virginia Human Rights Act and

Defendant Gabriel Bros. was covered by the ADA and the West Virginia Human Rights Act.

31.     At all times relevant herein, Plaintiff suffered from a disability due to her serious health condition as defined under the ADA and the West Virginia Human Rights Act.  Defendants knew she was disabled and that the disability caused her to miss some time from work.

32.     Plaintiff's serious health condition constituted a disability for the purpose of the West Virginia Human Rights Act.

33.     Alternatively, Defendants perceived Plaintiff as disabled under the ADA and the West Virginia Human Rights Act.

34.     Defendant Cantrell informed Plaintiff that she was not a reliable employee because she had to miss work for her doctor's appointments despite the doctor's excuses and the intermittent FMLA leave she was using.

35.     Defendants, each and every one of them, had actual knowledge of Plaintiff's conditions and serious health condition.

36.     Despite Defendants' actual knowledge of Plaintiff's injuries, Defendants discriminated against Plaintiff Rice by terminating her employment, thereby intentionally and/or maliciously violating the ADA and the West Virginia Human Rights Act by interfering, restraining and denying Plaintiff's rights, which she was entitled, under both Acts.

37.     The actions of Defendants, and each of them, as described above, constitute discrimination against Plaintiff in violation of the ADA and the West Virginia Human Rights Act, West Virginia Code § 5-11-1, *et seq*., in that they represent a failure

not to discriminate against Plaintiff for her disability, which is required because of Plaintiff's disability or Defendants' perception that Plaintiff had a disability all in violation of the ADA and the West Virginia Human Rights Act.

38.     Defendant Gabriel Bros. is liable for all wrongful acts of Defendant Contrell alleged herein pursuant to the principles of agency and the doctrine of *respondeat superior*.

39.     Defendants engaged in such conduct in an outrageous, reckless, willful, wanton and malicious manner, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish Defendants.

## SECOND CAUSE OF ACTION

## TERMINATION IN VIOLATION OF SUBSTANTIAL PUBLIC POLICY RETALIATORY DISCHARGE

40.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, inclusive.

41.     Defendants terminated Plaintiff's employment for reasons prohibited by statute and public policy, and therefore, Plaintiff's termination constitutes a wrongful discharge in violation of West Virginia's Public Policy as set forth in:

      a.     The West Virginia Human Rights Act;

      b.     The Common Law of the State of West Virginia as expressed in its judicial decisions;

      c.     West Virginia Code § 5-11-1, *et seq.*;

      d.     West Virginia Law; and

      e.     Such other sources of law and public policy as recognized by West Virginia Courts as supporting a *Harless v. First Nat'l Bank in*

*Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978) – type claim

certain of such sources of law and public policy may be federal in

nature, however, Plaintiffs are not asserting herein a federal claim.

42.     As a direct and proximate result of Defendants' illegal discrimination, retaliation and termination of Plaintiff in violation of public policy, Plaintiff has suffered and will continue to suffer, lost wages and benefits in an amount to be proven at trial.

43.     As a direct and proximate result of Defendants' actions, Plaintiff is entitled to damages for indignity, embarrassment, humiliation and emotional distress in an amount to be determined by the jury.

44.     Defendants engaged in such conduct in an outrageous, reckless, willful, wanton and malicious manner, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish Defendants.

<u>**THIRD CAUSE OF ACTION**</u>

**INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993**

45.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 44, inclusive.

46.     At all times mentioned, Plaintiff was qualified and eligible to take leave under the FMLA due to her serious health condition, which resulted from her workplace injury.

47.     Prior to and at the time of her termination, Plaintiff had been employed by Defendants longer than twelve (12) months and had worked at least twelve hundred fifty (1250) hours of service for Defendants.

48.     Defendants are and were a covered employer under the FMLA as they offered it to all their employees.

49.     FMLA § 105 provides, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."

50.     FMLA § 105 further provides, "It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual: has instituted or caused to be instituted any proceeding, under or related to this title; Has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this title."

51.     Plaintiff engaged in FMLA protected activity when she requested a medical leave of absence (FMLA leave) to treat her serious health condition and / or injury and she supplied more than sufficient notice about her serious injury/condition to Defendants such that it required them to provide FMLA eligibility notice to Plaintiff.

52.     Plaintiff engaged in FMLA protected activity by giving notice in the following ways:

    a.  Through providing notice to her employer that she suffered from a serious medical condition that required ongoing medical treatment;

    b.  By providing the appropriate medical documentation and doctor's excuses to her employer;

    c.  By completing her required leave form through Human Resources.

53.     When Plaintiff requested and/or required FMLA leave, she was qualified and eligible for FMLA leave.

54.     Defendants took adverse action and interfered with Plaintiff up to and including discharging Plaintiff because Plaintiff had requested and used FMLA; and/ or was still eligible to take FMLA leave. (*See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199 holding "We therefore hold that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee").

55.     Defendants, by terminating Plaintiff for her applying for and receiving FMLA intermittent leave due to her serious health condition and illness, also interfered with her intermittent leave when Defendant Cantrell forced Plaintiff to miss her scheduled appointments and treatment or be faced with adverse employment action and acted in a retaliatory adverse manner because Defendants based their termination on absences from missed workdays that Defendants had granted to Plaintiff while Plaintiff was injured. Further, Defendant Cantrell informed Plaintiff that she was missing too many days and was an unreliable employee.

56.     Defendants' conduct up to and including terminating Plaintiff is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's FMLA rights.

**WHEREFORE**, Plaintiff seeks all appropriate relief, including but not limited to, damages in the form of back pay, front pay, actual monetary losses sustained as a direct result of Defendants' violations, liquidated damages, and any other relief that this Court deems fit.

**FOURTH CAUSE OF ACTION**

**RETALIATION FOR EXERCISING RIGHTS AND ENGAGING IN CONDUCT
PROTECTED UNDER THE FAMILY AND MEDICAL LEAVE ACT**

57.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 56, inclusive.

58.     At all times mentioned, Plaintiff was qualified and eligible to take leave under the FMLA due to her serious health condition injury.

59.     Prior to and at the time of er termination, Plaintiff had been employed by Defendant longer than twelve (12) months and had worked at least twelve hundred fifty (1250) hours of service.

60.     Defendant is and was a covered employer under the FMLA as it was offered to and received by Plaintiff.

61.     FMLA § 105 provides, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."

62.     FMLA § 105 further provides, "It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual: has instituted or caused to be instituted any proceeding, under or related to this title; has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this title."

63.     Plaintiff engaged in FMLA protected activity when she requested a medical leave of absence (FMLA leave) to treat her serious health condition and supplied more than sufficient notice about her serious health conditions to Defendants such that it required them to provide FMLA eligibility notice to Plaintiff.

64.     Plaintiff engaged in FMLA protected activity by giving notice in the following ways:

a.   Through filing for and being approved for FMLA intermittent leave based upon her illness;

b.   Through verbally informing the District Manager, her store manager, and the Human Resources Department;

c.   Through submitting on numerous occasions medical/doctor excuses to her employer as to keep them informed of her ongoing medical treatment.

65.     When Plaintiff requested and/or required FMLA leave, she was qualified and eligible for FMLA leave.

66.     Defendant Gabriel Bros. took adverse action and retaliated against Plaintiff up to and including discharging Plaintiff because Plaintiff had requested FMLA; and/ or was still eligible to take FMLA leave. (*See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199 holding "We therefore hold that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee").

67.     Defendants, by terminating Plaintiff for Plaintiff's absences, also acted in a retaliatory adverse manner because Defendants based their termination on absences from missed workdays that Defendants had granted to Plaintiff while Plaintiff was treating for a serious health condition.

68.     Defendants' conduct up to and including terminating Plaintiff is and was in bad faith, malicious, reckless and purposefully indifferent to Plaintiff's FMLA rights.

**WHEREFORE**, Plaintiff seeks all appropriate relief, including but not limited to, damages in the form of back pay, front pay, actual monetary losses sustained as a direct

result of Defendants' violations, liquidated damages, and any other relief that this Court deems fit.

   **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

   1. For general and special damages, including front pay and back pay, according to the proof, including such consequential damages as may be established at the time of trial;

   2. Punitive damages in an amount to be determined by the jury at trial;

   3. Interest on judgment at the legal rate from the date of judgment;

   4. Prejudgment interest on Plaintiff's damages as allowed by law;

   5. Attorneys' fees and costs; and

   6. Such other relief to which Plaintiff may be entitled.

       Respectfully submitted,

       **PLAINTIFF,**
       **HELEN RICE,**
       **By Counsel,**

       **/s/ Abraham J. Saad**
       **Abraham J. Saad WVSB #10134**
       **SAAD DIXON LAW OFFICES PLLC**
       **730 4th Avenue**
       **P.O. Box 1638**
       **Huntington, WV 25717-1638**
       **Telephone: (304) 522-4149**
       **Facsimile: (800) 879-7248**
       **Email: ajs@saadlawoffice.com**

       **/s/ John A. Proctor**
       **John A. Proctor (WVSB #7778)**
       **FRAZIER OXLEY & PROCTOR, LLC**
       **401 10th Street, Mezzanine**
       **Huntington, WV 25701**
       **Office: (304) 697-4370**
       **Facsimile: (304) 525-8858**
       **Email: proctorlaw@wvdsl.net**