# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

HELEN RICE,

        Plaintiff,

v.                                    CIVIL ACTION NO. 3:17-4034

GABRIEL BROTHERS, INC.,
a domestic corporation and
MICHELLE CONATSER, an individual,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Partial Rule 12(b)(6) Motion to Dismiss by Defendants Gabriel Brothers, Inc. and Michelle Conatser (ECF No. 12), Defendants' Motion to Strike Plaintiff's "Sur-Reply" in Support of her Opposition to Defendants' Partial Rule 12(b)(6) Motion to Dismiss (ECF No. 18), and Plaintiff Helen Rice's Motion for Leave to File "Sur-Reply to Defendants' Response. ECF No. 19. For the following reason, the Court **GRANTS** the motion to dismiss by Defendants and Plaintiff's motion to file a "Sur-Reply" and **DENIES** Defendants' motion to strike.

## I.
## FACTUAL ALLEGATIONS

As relevant to this motion, Plaintiff asserts in her Amended Complaint that she was employed by Defendant Gabriel Brothers, Inc., beginning in December of 2013. *Am. Compl.* at ¶5, ECF No. 11. In May of 2015, Plaintiff requested leave under the Family Medical Leave Act (FMLA) for a medical problem. *Id*. at ¶8. A few months later, Gabriel Brothers hired Defendant

Michelle Conatser as the General Manager/Store Manager for the store where Plaintiff worked. *Id*. at ¶10. According to Plaintiff, Ms. Conatser called her when she was off sick and told her "you need to rethink your position with the company. We need someone reliable who is not sick all the time." *Id*. at ¶11. Thereafter, Plaintiff alleges that Ms. Conatser refused to allow her to take off work for some of her scheduled doctor's appointments, scolded her when she missed work for a medical appointment, and began giving her warnings about her performance. *Id*. at ¶¶12-14. Plaintiff states she received no disciplinary actions or write-ups prior to Ms. Conatser being hired. *Id.* at ¶10.

In December 2015, Plaintiff asserts that she learned that Ms. Conatser was improperly altering the payroll records of certain employees. *Id*. at ¶¶19-26. Plaintiff states that she reported the problem to the Regional Manager of Loss Prevention. *Id*. at ¶26. Subsequently, Plaintiff states she was terminated by the District Manager on January 7, 2016. *Id*. at ¶27.

In her Complaint, Plaintiff sets forth four causes of action: (1) disability discrimination under the West Virginia Human Rights Act; (2) retaliatory discharge in violation of a substantial public policy for reporting Ms. Conatser's misconduct; (3) interference with Plaintiff's rights under the FMLA; and (4) retaliation for exercising and engaging in conducted protected by the FMLA. In their motion, Defendants argue that Plaintiff's second cause of action must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because Plaintiff has failed to allege the source of the substantial public policy Defendants purportedly violated.

# II.
# STANDARD OF REVIEW

In ruling on a motion made pursuant to Rule 12(b)(6), the Court looks to the analysis set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

Thereafter, in *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

**II.**
**DISCUSSION**

West Virginia is an "at will" employment state, which generally means that an "at will" employee may be discharged by an employer for any reason at any time. *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 540 (W. Va. 2016) (footnote omitted). However, there are various exceptions to this general rule, "one of which is that an employee may not be discharged to subvert public policy." *Id.* In the landmark case of *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), the West Virginia Supreme Court declared:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl. Pt., *id.* Thus, under West Virginia law, an aggrieved employee may bring a cause of action for wrongful discharge if an employer terminates the employee in violation of a substantial public policy. *Nutter*, 795 S.E.2d at 541 (quoting *Feliciano v. 7–Eleven, Inc.*, 559 S.E.2d 713, 718 (W. Va. 2001)).

If an employee brings an action, it is the employee's burden "to establish the existence of a substantial public policy." *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 190 (W. Va. 2010) (citation omitted). "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred," the West Virginia Supreme Court has said one must "look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, *Birthisel v. Tri–Cities Health Servs. Corp.*, 424 S.E.2d 606 (W. Va. 1992). Ultimately, it is for the Court to decide whether a plaintiff has met that burden because it "is a question of law, rather than a question of fact for a jury." Syl. Pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111 (W. Va. 1984).

The West Virginia Supreme Court further has stated that a plaintiff must meet a four-part test to prevail on a claim that a wrongful discharge violated a substantial public policy. Specifically, a plaintiff must demonstrate:

> (1) [Whether a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> (2) [Whether] dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> (3) [Whether t]he plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

(4) [Whether t]he employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Swears v. R.M. Roach & Sons, Inc.*, 696 S.E.2d 1, 6 (W. Va. 2010) (quoting *Feliciano*, 559 S.E.2d at 723 (internal quotation marks and citations omitted)). In this case, the parties disagree whether Plaintiff can meet the first prong, the "clarity" element. Specifically, Defendants assert that Plaintiff has failed to identify any substantial public policy that was violated.

In looking at Plaintiff's second cause of action for wrongful termination, paragraphs 41 and 42 of her Amended Complaint provide:

> 41. Defendants terminated Plaintiff's employment for reasons prohibited by statute and public policy, and therefore, Plaintiff's termination constitutes a wrongful discharge in violation of West Virginia's Public Policy as set forth in:
>
> a. The Common Law of the State of West Virginia as expressed in is judicial decisions;
>
> b. West Virginia law; and
>
> c. Such other sources of law and public policy as recognized by West Virginia Courts as supporting a *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978) – type claim certain of such sources of law and public policy may be federal in nature, however, Plaintiffs are not asserting herein a federal claim.
>
> 43. As a direct and proximate result of Defendants' retaliation against Plaintiff because Plaintiff was engaged in the protected behavior of reporting company misconduct—that is, reporting that Ms. Conatser was illegally altering time cards and/or reducing hours worked to eliminate overtime hours of Gabriel Bros.' employees in violation of a substantial public policy, Plaintiff has suffered and will continue to suffer, lost wages and benefits in an amount to be proven at trial.

*Am. Compl.* at ¶¶42 & 43. Although Plaintiff alleges she was engaged in a protected activity by reporting to management that another individual was altering other employees' time cards, nowhere in this cause of action does she identify the actual source of the substantial public policy she is relying upon for her claim. Instead, she broadly states there are federal and state laws and policies and state judicial decisions that prohibit an employer from retaliating against an employee who makes such reports. In her Response, Plaintiff acknowledges that she did not cite the source of any specific substantial public policy. Nevertheless, she insists a fair reading of the Amended Complaint demonstrates her termination violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), and the West Virginia Minimum Wage and Maximum Standards Act, W. Va. Code § 21-5C-1 *et seq.*

In *Wiley v. Asplundh Tree Expert Co.*, 4 F. Supp. 3d 840 (S.D. W. Va. 2014), the Honorable Thomas E. Johnson was presented with an analogous situation. In *Wiley*, the plaintiffs generally alleged, inter alia, that the defendant failed to compensate them for work they had performed. 4 F. Supp. 3d at 842. In Count 1, the plaintiffs alleged a violation of the FLSA for failing to pay the plaintiffs overtime compensation. In Count 2, the plaintiffs made a claim under the WPCA for unlawfully assigning wages by docking their pay. In Count 3, the plaintiffs claimed the defendant violated the FLSA by discriminating against them for filing an action. Finally, in Count 4, the plaintiffs alleged wrongful discharge under *Harless* for violating a substantial public policy. *Id.* at 843.[1]

---

[1] In their First Amended Complaint, the plaintiffs claimed that, after they filed their initial Complaint, the defendant retaliated against them by changing their work obligations to the plaintiffs' detriment. *Wiley*, *First Am. Compl.*, at ¶32, 2:13-02952, ECF No. 12.

In considering the plaintiffs' *Harless* claim, the court determined the plaintiffs failed to meet the pleading standard set forth in *Iqbal*. *Id*. at 845. The court found that nowhere in the plaintiffs' "initial or amended Complaints do they identify the substantial public policy that would animate their *Harless* claim. As such, Defendant (and the Court) are left to speculate what the ground is for Plaintiffs' claim of entitlement to relief." *Id*. In order to establish a plausible claim, the court held it was the plaintiffs' obligation "to specify the source of legal authority that recognizes that a substantial West Virginia public policy is as a matter of law at stake in this case." *Id*. Without such showing, the Court found the plaintiffs failed to state a claim. *Id*.

In addition, for the sake of efficiency the court addressed and rejected the plaintiffs' argument that their source of authority arose from Article III, Section 17 of the West Virginia Constitution, which protects their access to the West Virginia court system. In analyzing this issue, the court recognized "that 'the West Virginia courts have proceeded with "great caution" in applying public policy to wrongful discharge actions.'" *Id*. (quoting *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962-63 (4th Cir. 1989); also citing *Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 84 (4th Cir. 1990) (observing "a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances"); *Yoho v. Triangle PWC, Inc.*, 336 S.E.2d 204, 209 (stating "despite the broad power vested in the courts to determine public policy, we must exercise restraint when we use it")). Likewise, given the West Virginia Supreme Court's narrow interpretation of *Harless*, the court in *Wiley* declined to recognize a new *Harless* claim under a section of the WCPA that the West Virginia Supreme Court had never held created such a claim. *Id*. 847-49 (citing *Baisden v. CSC-Pa, Inc.*, Civ. Act. No. 2:08-cv-01375, at *5, 2010 WL 3910193

(S.D. W. Va. Oct. 1, 2010) (Goodwin, C.J.) (granting partial summary judgment in favor of the defendants on the plaintiff's *Harless* claim that he was wrongfully discharged "for trying to enforce his rights under the" WCPA, where the West Virginia Supreme Court of Appeals had not recognized the claim, and it "has read *Harless* narrowly so as not to unlock a Pandora's box of litigation in the wrongful discharge arena" (internal quotation marks and citations omitted)). To the extent the plaintiff's retaliatory discharge claim was based upon filing their lawsuit, the court further found it was preempted by the FLSA's anti-retaliation provision, 29 U.S.C. § 218c. *Id.* at 850.[2]

In the present case, Plaintiff concedes she has not identified the source of any specific substantial public policy in her Amended Complaint. In fact, although Plaintiff now argues a fair reading of the Amended Complaint establishes her termination violates substantial public policies based upon the FLSA and the WCPA, Plaintiff does not mention either of those Acts anywhere within the four corners of her entire Amended Complaint. Merely stating in a complaint that there are laws, policies, and judicial decisions in West Virginia and there "may" be some federal laws and policies that prohibit the actions taken by Defendants, fails to give the Court sufficient information to evaluate the plausibility of the claim. Therefore, the Court finds Plaintiff's second cause of action does not satisfy the *Iqbal* standard. As stated in *Wiley*, it is not this Court

---

[2]Plaintiff argues that the Court should follow its recent decision in *Collins v. Lowe's Home Centers, LLC*, Civ. Act. No. 3:17-1902, 2017 WL 6061980 (S.D. W. Va. Dec. 7, 2017), where the Court recognized a *Harless* claim based upon the FMLA. However, the Court specifically found "[b]y its own terms, the FMLA does not preempt state law claims." 2017 WL 6061980, *7 (citations omitted). To the contrary, the Fourth Circuit held in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), "that Congress prescribed exclusive remedies in the FLSA for violations of its mandates." 508 F.3d at 194.

or Defendants' obligation to speculate about the source of substantial public policy. Rather, it is Plaintiff's burden to identify the policy within her Amended Complaint, and Plaintiff has failed to meet her burden. Moreover, for the reasons stated in *Wiley*, even if Plaintiff properly had asserted the WCPA and the FLSA as the basis of her *Harless* claim, the claim would not survive.[3]

## III.
## CONCLUSION

Accordingly, for the forgoing reasons, the Court finds that Plaintiff has failed to state a proper claim for retaliatory discharge in her second cause of action. Therefore, the Court **GRANTS** Defendants' motion to dismiss that claim. ECF No. 12. As the Court did review and consider Plaintiff's Sur-Reply in reaching this decision, the Court **GRANTS** her Motion for Leave to File "Sur-Reply to Defendants' Response (ECF No. 19) and **DENIES** Defendants' Motion to Strike Plaintiff's "Sur-Reply" in Support of her Opposition to Defendants' Partial Rule 12(b)(6) Motion to Dismiss. ECF No. 18.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 23, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3]Plaintiff cites *McClung v. Marion Cty. Comm'n*, 360 S.E.2d 221 (W. Va. 1987), for the position that the WCPA can serve as the basis of a *Harless* claim. However, as recognized in *Wiley*, *McClung* involved a public employee, not a private sector employee, and West Virginia has enacted protections for public employees, such as whistle-blower legislation, that is not extended to private employees so as not to overburden a private sector employer's right to discharge an at will employee. *Wiley*, 4 F. Supp. 3d at 846-47. Thus, *McClung* is distinguishable from both *Wiley* and the present case.